IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-128-D
No. 5:25-CV-784-D

| | | |
|---|---|---|
| JOHNATHAN CRAWFORD, Petitioner, | ) | |
| v. | ) | **ORDER** |
| UNITED STATES OF AMERICA, Respondent. | ) | |

On April 19, 2023, a federal grand jury in the Eastern District of North Carolina indicted Johnathan Crawford ("Crawford" or "petitioner") for knowingly escaping lawful custody at Alston Wilkes Society Residential Reentry Center ("Center") in Fayetteville, North Carolina [D.E. 1]. On July 27, 2023, with a plea agreement, Crawford pleaded guilty to that charge [D.E. 21–22, 24, 53, 54]. On April 29, 2024, the court sentenced Crawford to 60 months' imprisonment, three years of supervised release, and a $100 special assessment [D.E. 45, 47, 48, 55, 56]. On September 10, 2025, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment. See United States v. Crawford, No. 24-4272, 2025 WL 2612760 (4th Cir. Sept. 10, 2025) (unpublished).

On December 1, 2025, Crawford, proceeding pro se, moved to vacate his sentence under 28 U.S.C. § 2255 [D.E. 63] and filed a memorandum in support [D.E. 64]. On December 15, 2025, Crawford moved for appointment of counsel and a sentence reduction under 18 U.S.C. § 3582 [D.E. 67]. On January 12, 2026, the government moved to dismiss Crawford's motion to vacate [D.E. 70] and filed a memorandum in support [D.E. 71]. On January 28, 2026, the government

moved to dismiss Crawford's motion for appointment of counsel and for a sentence reduction [D.E. 73] and filed a memorandum in support [D.E. 74]. On February 24, 2026, Crawford responded to the government's motion to dismiss his section 2255 motion [D.E. 75]. As explained below, the court grants the government's motion to dismiss Crawford's section 2255 motion, dismisses Crawford's section 2255 motion, denies a certificate of appealability, grants the government's motion to dismiss Crawford's section 3582 motion, denies Crawford's motion for counsel, and denies without prejudice Crawford's section 3582 motion.

I.

On February 26, 2018, Crawford was convicted of distribution and possession with intent to distribute cocaine in the Western District of North Carolina. See Presentence Investigation Report ("PSR") [D.E. 34] ¶¶ 5, 29. The court sentenced Crawford to 77 months' imprisonment in the custody of the Bureau of Prisons ("BOP") followed by four years of supervised release. See id. ¶ 5. On September 7, 2022, the BOP transferred Crawford from a BOP facility to the Center. See id. There, Crawford remained lawfully confined under the judgment. See id.

On November 20, 2022, around 2:00 AM, officers from the Anson County Sheriff's Office in Wadesboro, North Carolina, responded to a call from Atrium Health Stanly Hospital about a shooting victim, C.G. See id. ¶ 6. Officers spoke with C.G., Crawford's then-girlfriend, who said Crawford shot her while he was on a 52-hour pass from the Center. See id. C.G. told the officers that Crawford had stopped at her residence to retrieve some of his clothes, and she had planned to return to her residence only after Crawford left. See id. When C.G. arrived at her residence, Crawford was still there. See id. While in C.G.'s residence, Crawford searched through C.G.'s belongings. See id. Crawford confronted C.G. with a yellow piece of paper and asked, "What is this?" Id. C.G. responded that she did not know. See id. Crawford then pulled a firearm from his

backpack and shot C.G. in the arm. See id. Unbeknownst to Crawford, C.G. was pregnant at the time. See Sent. Tr. [D.E. 56] 18. After Crawford shot C.G., C.G. convinced Crawford to take her to the hospital by promising him not to involve the police. See PSR ¶ 6.

After interviewing C.G., officers visited C.G.'s residence but Crawford was gone. See id. Officers contacted the Center around 4:00 AM and notified the Center about Crawford's alleged conduct. See id. ¶ 7. The Center attempted to contact Crawford and could not reach him. See id. On November 20, 2022, the Center placed Crawford in escape status. See id.

On December 3, 2022, Crawford threatened to "shoot up" C.G.'s residence. See id. ¶ 8. At the time, C.G. was acting as a witness in state court proceedings about the shooting on November 20, 2022. See id. ¶¶ 8, 37.

On March 9, 2023, officers at the Chesterfield County Sheriff's Office in Chesterfield, South Carolina, received information that Crawford was at a residence in Cheraw, South Carolina. See id. ¶ 9. Chesterfield officers apprehended and arrested Crawford at the residence without incident. See id.

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."

Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Crawford must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (citation omitted). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expressed preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every

inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

Crawford asks the court to vacate his sentence. Crawford alleges that his counsel provided ineffective assistance in advising Crawford about the guilty plea, failing to object to allegedly false information in the PSR, and failing to file a motion to withdraw Crawford's guilty plea at some unspecified time before the court pronounced his sentence. See [D.E. 64] 8–13.

First, Crawford alleges that counsel gave him deficient advice about pleading guilty. According to Crawford, defense counsel approached Crawford with a plea offer with no predetermined term of imprisonment. See id. 8. Counsel also told Crawford that the government would be seeking the statutory maximum sentence of 60 months' imprisonment. See id. Crawford asked, "[W]hat was the benefit in pleading guilty, if the Government was going to recommend the statutory maximum[?]" Id.; cf. Fed. R. Crim. P. 11(c)(1)(B).

According to Crawford, defense counsel then negotiated with the government and returned to Crawford with a proposed plea agreement in which each side would recommend a sentence of 39 months' imprisonment. See [D.E. 64] 8. Counsel explained that the advisory guideline range would likely be lower than 39 months' imprisonment, but, based on defense counsel's experience in sentencing proceedings with the court and the egregious facts, the court would likely depart upwardly. See id. 8–9. The proposed plea agreement mitigated those facts with a joint recommendation of a sentence 21 months below the statutory maximum. See id. Thus, according to Crawford, defense counsel strongly encouraged Crawford to accept the proposed plea agreement

as being in his best interest. See id. According to Crawford, Crawford took counsel's advice and accepted the plea agreement. See id. 9.

At Crawford's Rule 11 hearing, Crawford confirmed under oath that he understood his trial rights and that he would waive those rights if he pleaded guilty. See Rule 11 Tr. [D.E. 54] 4–5, 16. Crawford also confirmed his understanding that the sentencing hearing would take place in October 2023, and that regardless of the advisory guideline range determined at sentencing, he could not withdraw a guilty plea tendered and accepted at the Rule 11 hearing. Id. 5–7, 18. He also confirmed that he understood that the court would determine his advisory guideline range and sentence at the sentencing hearing, and that the court had the authority to sentence him to the statutory maximum of 60 months' imprisonment. Id. 5–6, 18. He also confirmed that he understood that any estimate of his advisory guideline range or sentence from his lawyer or anyone else was not binding on the court. See id. The court also explained that if Crawford had entered a plea agreement with an agreement to recommend a specific sentence or advisory sentencing range, the court had the discretion to reject such a recommendation, and Crawford could not withdraw his guilty plea if the court rejected such a recommendation. See id. 6, 18.

During the Rule 11 hearing, the court also reviewed the charge and the potential penalties. See id. 14–17. Crawford confirmed that he understood the charge, the potential penalties, and the sentencing process. See id. 14–18. The court also reviewed Crawford's plea agreement with him. See id. 18–19. Crawford confirmed that he had reviewed the plea agreement with his lawyer and that it contained the entire agreement that he had with the government. See id. Notably, the plea agreement does not contain an agreement for a joint recommendation of a 39-month sentence. See Plea Ag. [D.E. 24] ¶¶ 4–5. At the end of the Rule 11 process, Crawford knowingly and voluntarily

pleaded guilty with a plea agreement, and the United States provided a factual basis for the plea. See Rule 11 Tr. 3–25; [D.E. 22, 53, 54].

On December 4, 2023, Crawford filed objections to the PSR about C.G.'s allegedly unreliable statements and to an upward departure. See [D.E. 30] ¶¶ 1–4.

On April 29, 2024, the court held Crawford's sentencing hearing. See Sent. Tr. 1. At the sentencing hearing, the court accepted the uncontested portions of the PSR. See id. 4; Fed. R. Crim. P. 32(i)(3). The court then discussed Crawford's objections with counsel, and Crawford's counsel clarified the purpose of the objections was to safeguard Crawford's rights in the ongoing state-court proceedings. See Sent. Tr. 4–5. An officer confirmed the accuracy of the statements contained in the PSR, and the court overruled Crawford's objections. See id. 8, 12. The United States then asked for an upward departure under U.S.S.G. §§ 5K2.21, 5K2.6, and 5K2.2. See id. 9. The court granted the United States' motion for upward departure under U.S.S.G. §§ 5K2.6 and 5K2.2. See id. 9–11.

Defense counsel addressed the factors under 18 U.S.C. § 3553(a) and asked for a 39-month sentence. See id. 12–21. Crawford then allocuted. See id. 21–23. The government then addressed the section 3553(a) factors and asked for a 39-month sentence. See id. 23–26. During the government's presentation, the Assistant United States Attorney acknowledged that he had agreed with defense counsel to recommend a 39-month sentence. See id. 26.

The court thoroughly evaluated the section 3553(a) factors. See id. 11–35. The court noted Crawford's serious criminal conduct in escaping and remaining in escape status. See id. 27–28. The court also noted Crawford's prolonged, horrifying, and violent criminal history. See id. 29–30. The court also noted that despite Crawford's stable upbringing, he had chosen a life of crime. See id. 28–30. The court then discussed the need to protect society from Crawford, to promote respect

for the law, and to provide just punishment. See id. 30–35. The court sentenced Crawford to 60 months' imprisonment. See id.

In Crawford's section 2255 motion, Crawford argues that defense counsel's advice about pleading guilty was deficient and cites as proof that he got a 60-month sentence. See [D.E. 64] 8–9. The court rejects Crawford's argument. During Crawford's Rule 11 hearing, the court advised Crawford that the court retained the discretion to impose a 60-month sentence. See Rule 11 Tr. 17–20. The plea agreement also made this clear. See Plea Ag. 5. During the Rule 11 hearing, the court confirmed Crawford's understanding of his plea agreement. See Rule 11 Tr. 18. Crawford's sworn statements at his Rule 11 hearing bind him. See, e.g., United States v. Yelizarov, 140 F.4th 597, 605 (4th Cir. 2025) ("Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy."), cert. denied, 146 S. Ct. 345 (2025).

In concluding that Crawford has failed to plausibly allege deficient performance about defense counsel's advice to plead guilty simply because Crawford received a 60-month sentence, the court notes that the Supreme Court has emphasized the need for "strict adherence to the Strickland standard . . . when reviewing the choices an attorney made at the plea bargain stage." Premo v. Moore, 562 U.S. 115, 125 (2011). "An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial." Id. Here, Crawford has not plausibly alleged deficient performance by counsel in advising him to plead guilty to the charge with a joint non-binding recommendation of a 39-month sentence. See, e.g., id. at 125–32; Strickland, 466 U.S. at 687–91.

Alternatively, even if Crawford could show deficient performance, he has not plausibly alleged prejudice. Crawford confirmed at his Rule 11 hearing that he was satisfied with his

counsel. See Rule 11 Tr. 13–14. At his Rule 11 hearing, Crawford also confirmed that the court could reject any non-binding recommendation of a particular sentence, that the court could sentence him to the statutory maximum of 60 months, and that if it did so, Crawford could not withdraw his guilty plea. See id. 5–7, 16–19; Plea Ag. 1, 4–5. These statements cure any alleged deficiencies in defense counsel's advice to plead guilty and defeat Crawford's claim. See, e.g., Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 691–96; Yelizarov, 140 F.4th at 605; United States v. Taylor-Sanders, 88 F.4th 516, 522–23 (4th Cir. 2023); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). Moreover, Crawford has not plausibly alleged any contemporaneous evidence that he would have pleaded not guilty to the escape charge if counsel had told him that the court could give him 60 months' imprisonment. Thus, Crawford has failed to plausibly allege prejudice. See Lee, 582 U.S. at 369; Hill, 474 U.S. at 60.

Next, Crawford contends that counsel's failure to file a motion to withdraw his guilty plea at some unknown point before the court pronounced his sentence reflects deficient performance. See [D.E. 64] 11. But Crawford acknowledges that "he had the odds stacked against him," with respect to the escape charge. Id. 12. Moreover, at no point during Crawford's sentencing hearing did he express a desire to withdraw his guilty plea.

A defendant often enters a guilty plea based on the strength of the prosecution's evidence. See Brady v. United States, 397 U.S. 742, 756 (1970). Here, Crawford unquestionably escaped on November 20, 2022, and remained in escape status until captured on March 9, 2023. Crawford's alleged desire at some unknown point between his Rule 11 hearing and his sentencing hearing to withdraw his guilty plea does not plausibly show defense counsel's deficient performance in not filing a motion to withdraw Crawford's guilty plea. See Strickland, 466 U.S. at 687–91. Indeed, defense counsel knew that Crawford pleaded guilty, and if counsel filed a baseless motion to

withdraw his guilty plea, then Crawford would lose acceptance of responsibility at sentencing thereby increasing his advisory guideline range. See PSR ¶ 77; Plea Ag. 7; cf. U.S.S.G. § 3E1.1.

Tellingly, Crawford has not plausibly alleged a basis to withdraw his guilty plea. See, e.g., United States v. Smith, 157 F.4th 366, 374–75 (4th Cir. 2025); Unites States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991); United States v. Canady, 825 F. Supp. 3d 599, 606–11 (E.D.N.C. 2026) (collecting cases). A guilty plea may be withdrawn after the court accepts the guilty plea but before sentencing only if the defendant shows a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P 11(d)(2)(B). Crawford has failed to plausibly allege a "fair and just reason" to withdraw his guilty plea. See Smith, 157 F.4th at 374–75; Moore, 931 F.2d 248–49; Canady, 825 F. Supp. 3d at 606–11. The Sixth Amendment does not require defense counsel to file a baseless motion. See, e.g., Knowles v. Mirzayance, 556 U.S. 111, 124–28 (2009). Thus, even if Crawford expressed a desire to withdraw his guilty plea, Crawford has failed to plausibly allege deficient performance or prejudice in his counsel's decision not to file a baseless motion to withdraw Crawford's guilty plea. See id.

Next, Crawford alleges that counsel did not adequately object to the facts contained in the PSR at the sentencing hearing. See [D.E. 64] 9. But the record demonstrates that counsel made "several" objections at the sentencing hearing "to the PSR's finding that the allegations against [him] in Anson County were facts . . . to preserve any claim for direct review . . . [and] to protect [him] from being incriminated during any subsequent prosecution in Anson County." Id.; Sent. Tr. 4–5. The court considered those objections and overruled them. See Sent. Tr. 5. Although Crawford wishes that the court resolved his objections differently, defense counsel had no control over the court's decisions. Thus, Crawford's claim fails to plausibly allege deficient performance or prejudice. See, e.g., Knowles, 556 U.S. at 124–28; Strickland, 466 U.S. at 687–96.

Finally, to the extent that Crawford faults his defense counsel for failing to seek to continue the sentencing hearing, the claim fails. Crawford's counsel successfully obtained three continuances of the sentencing hearing before it occurred. See [D.E. 29, 37, 39]. Although Crawford may have liked to delay his sentencing as long as possible, this court has a duty to resolve each of its cases in a timely manner and his counsel had no control over this court's decision to proceed with Crawford's sentencing. Thus, Crawford fails to plausibly allege deficient performance or prejudice. See, e.g., Knowles, 556 U.S. at 124–28; Strickland, 466 U.S. at 687–96.

After reviewing the claims presented in Crawford's section 2255 motion, the court finds that reasonable jurists would not find the treatment of Crawford's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

Crawford captioned his section 3582 motion as a request for appointment of counsel and motion for a sentence reduction under Amendments 821, 825, and 828 of the Sentencing Guidelines. See [D.E. 67] 1. Crawford, however, must pursue a request for a sentence reduction through a section 3582(c)(2) motion. See [D.E. 74] 1–2. Thus, the court denies without prejudice Crawford's motion for a sentence reduction. Moreover, Crawford is not entitled to counsel in preparing a postconviction motion. See Fed. R. Crim. P. 44(a); Garza v. Idaho, 586 U.S. 232, 245 (2019); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Taylor, 414 F.3d 528, 536 (4th Cir. 2005); United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000). Accordingly, the court denies Crawford's request for counsel.

IV.

In sum, the court GRANTS respondent's motion to dismiss petitioner's section 2255 motion [D.E. 70], DISMISSES petitioner's section 2255 motion [D.E. 63], DENIES a certificate of appealability, GRANTS respondent's motion to dismiss petitioner's section 3582 motion and motion for counsel [D.E. 73], DENIES petitioner's motion for appointment of counsel [D.E. 67], and DENIES WITHOUT PREJUDICE petitioner's motion for a sentence reduction [D.E. 67].

SO ORDERED. This 28 day of August, 2026.

J. Dever

JAMES C. DEVER III
United States District Judge